# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | | |
|---|---|---|
| JASON WADE HOEFLING, | ‖ | |
| Plaintiff, | ‖ | **No. 09-CV-4041-DEO** |
| vs. | ‖ | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, Agent of Michael J. Astrue, | ‖ | |
| Defendant. | ‖ | |

_____

## I.   INTRODUCTION AND BACKGROUND

Plaintiff Jason Wade Hoefling (hereinafter "Hoefling"), seeks review of the Commissioner's decision that he is not disabled under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 et seq., and Title XVI of the Act, 42 U.S.C. §§ 1381 et seq.  Hoefling sought review of the Commissioner's decision by an Administrative Law Judge ("ALJ"), who determined that Hoefling was not disabled under the Act.  Tr. 12-24.  Hoefling subsequently sought review by the Social Security Administration's Appeals Council, which was denied (Tr. 6-11), making it the final decision of the Commissioner.  This Court has authority to review a final decision by the Commissioner under 42 U.S.C. § 405(g).  For

the reasons set forth herein, this Court reverses the ALJ's decision and directs the Commissioner to award Hoefling benefits.

Hoefling was born on July 31, 1969, and was 38 years old on the date the ALJ issued his decision. He is now 40 years old. He has a GED and has past relevant work history as a cook, a cashier, an assembler, and an industrial maintenance worker. Tr. 168. In his disability report, Hoefling alleges he is disabled because of depression, bipolar disorder, agoraphobia, and a left leg impairment. Tr. 147. Hoefling initially alleged a disability onset date of July 1, 1989; however, Hoefling later amended his alleged onset date to April 11, 2003. His date last insured is December 31, 2008. Tr. 15. Thus, Hoefling has the burden to establish disability by that date.

## A.  The ALJ's Decision

The ALJ uses a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. A claimant must prove: (1) that he has not engaged in substantial gainful activity; (2) that he has a medically determinable severe impairment, as that term is defined in the

regulations; and either (3) that his impairment meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is presumed to be disabled, and no further analysis is needed); or (4) that his impairment prevents him from performing his past relevant work. 20 C.F.R. § 404.1520. If the claimant carries his burden to this point, then the burden shifts to the Commissioner to prove there are other jobs the claimant can perform. Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).

In this case, the ALJ determined at step one that Hoefling had not engaged in substantial gainful activity since April 11, 2003. Tr. 18. At step two, the ALJ determined that Hoefling had severe impairments of panic disorder with agoraphobia, bipolar disorder II, and major depressive disorder, recurrent episode (20 C.F.R. § 404.1520(c) and 416.920(c)). Tr. 18. At step three, the ALJ found that Hoefling's impairments, including the substance use disorders, met listings 12.04 and 12.06 of 20 C.F.R. § Part 404, Subpart P, Appendix 1. The ALJ found that Hoefling met the "paragraph A" criteria because –

3

> [Hoefling] has medically documented
> depressive syndrome characterized by
> disturbance of sleep, feelings of guilt,
> difficulty concentrating, and thoughts of
> suicide; manic syndrome characterized by
> hyperactivity, decreased need for sleep and
> distractibility; and bipolar syndrome with
> periods manifested by the full symptomatic
> picture of both manic and depressive
> syndromes.

Tr. 18. The ALJ found that Hoefling met the "paragraph B" criteria because he had marked restriction in activities of daily living, moderate difficulties in social functioning, and marked difficulties with regard to concentration, persistence or pace. Tr. 19. The ALJ further determined that Hoefling had experienced one to two episodes of decompensation. Tr. 19. The ALJ next determined that Hoefling was credible concerning his symptoms and limitations.

Although the ALJ found at step three that Hoefling's impairments, including his substance use, left him disabled, the ALJ was required to analyze whether Hoefling's drug and alcohol use was a contributing factor material to his disability. Thus, the ALJ proceeded to examine whether Hoefling would have been disabled had he stopped his substance use. The ALJ determined that if Hoefling stopped his substance use, Hoefling had the following residual functional

capacity:

> to perform sedentary work as defined in 20
> C.F.R. § 404.1567(a) and 416.967(a) with
> the following additional non-exertional
> functional limitations, all based on mental
> impairments. His ability to understand,
> remember, and carry out short simple
> instructions has no limitation; his ability
> to understand, remember, and carry out
> detailed instructions at the unskilled
> level is moderately limited; his ability to
> make judgments on simple work related
> decisions has no limitations, his ability
> to interact with the public is markedly
> limited; his ability to interact with co-
> workers is mildly limited if the contact
> with the co-workers and supervisors is
> superficial, brief, and directly related to
> the work that he is required to perform;
> his ability to respond to work pressure in
> a usual work setting is moderate; ability
> to respond to work changes in a usual work
> setting is moderately limit[ed].

Tr. 20-21. After consulting with a vocational expert ("VE"),
the ALJ concluded that Hoefling could not perform his past
relevant work, but there were a significant number of jobs in
the national economy that Hoefling could perform. Tr. 23.
Thus, the ALJ found that "because Hoefling would not be
disabled if he stopped the substance use (20 C.F.R. §
404.1520(g) and 416.920(g)), [Hoefling's] substance use
disorders is a contributing factor material to the
determination of disability (20 C.F.R. § 404.1535 and

5

416.935)." Tr. 23. The ALJ found that Hoefling was not disabled under the Act.

## II. LAW AND ANALYSIS

In reviewing this case, this Court is required to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. <u>See</u> 42 U.S.C. § 405(g); <u>Ramirez v. Barnhart</u>, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the ALJ's decision. <u>See</u> <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the ALJ's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. <u>See</u> <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. <u>See</u> <u>Young v. Apfel</u>, 221 F.3d 1065, 1068 (8th Cir. 2000).

6

Still, in reviewing the record this Court must remain mindful of the ALJ's "duty to develop the record fully and fairly" in the non-adversarial administrative proceeding. <u>Snead v. Barnhart</u>, 360 F.3d 834, 838 (8th Cir. 2004); <u>Stormo v. Barnhart</u>, 377 F.3d 801, 806 (8th Cir. 2004).

In this case, the principle question the Court must consider is whether the ALJ's finding that Hoefling's substance use was a contributing factor material to the determination of disability was supported by substantial evidence on the record as a whole. 42 U.S.C. § 423(d)(2)(C) states: "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." In <u>Brueggemann v. Barnhart</u>, 348 F.3d 689 (8th Cir. 2003), the Eighth Circuit set out the appropriate procedure the ALJ must follow when considering whether a claimant's substance use was a contributing factor material to a determination of disability. First, the ALJ must evaluate whether the claimant is disabled "using the standard five-step approach described in 20 C.F.R.

§ 404.1535(a) without segregating out any effects that might

be due to substance use disorders." Id. at 694.

> If the gross total of a claimant's
> limitations, including the effects of
> substance use disorders, suffices to show
> disability, then the ALJ must next consider
> which limitations would remain when the
> effects of the substance use disorders are
> absent. Pettit v. Apfel, 218 F.3d 901, 903
> (8th Cir. 2000); 20 C.F.R. §
> 404.1535(b)(2). We have previously noted
> that when the claimant is actively abusing
> alcohol or drugs, this determination will
> necessarily be hypothetical and therefore
> more difficult than the same task when the
> claimant has stopped. Pettit, 218 F.3d at
> 903. Even though the task is difficult,
> the ALJ must develop a full and fair record
> and support his conclusion with substantial
> evidence on this point just as he would on
> any other.

Id. at 694-95.

> Only after the ALJ has made an initial
> determination 1) that [Claimant] is
> disabled, 2) that drug or alcohol use is a
> concern, and 3) that substantial evidence
> on the record shows what limitations would
> remain in the absence of alcoholism or drug
> addiction, may he then reach a conclusion
> on whether [Claimant's] substance use
> disorders are a contributing factor
> material to the determination of
> disability. If this process proves
> indeterminate, an award of benefits must
> follow.

Id. at 695.

8

In this case, the ALJ properly found that Hoefling was disabled at step three. The ALJ subsequently followed the necessary procedure by analyzing the effect of Hoefling's substance use on his disability and found that such use was a contributing factor material to the ALJ's finding of disability. The ALJ determined that Hoefling's statements concerning the intensity, persistence and limiting effects of his impairments were not credible. In making this finding, the ALJ cited Hoefling's "lack of commitment" to his psychotherapy and his testimony that he did not like alcohol and had not used alcohol in three years, which the ALJ found contrary to Hoefling's alcohol use as evidenced in the record. Tr. 22. The ALJ further noted,

> [Hoefling] also stated that he does not like being around people or going out in public but uses public transportation as a means to get around. Finally, [Hoefling] testified that he does not hang around his old friends because they use drugs and the only friend he currently has is his cousin but his cousin also uses drugs.

Tr. 22. The ALJ noted that once Hoefling was compliant with his medication and treatment appointments, Hoefling progressively improved. Tr. 22. The ALJ determined that if Hoefling stopped his substance use, he would not be disabled.

After review of the record, this Court is persuaded the ALJ's findings with respect to the effect of Hoefling's alcohol and drug use on his impairments are not supported by substantial evidence on the record as a whole. While the record makes clear that Hoefling had problems with alcohol and drug use (and he in fact admits as much), his impairments remained disabling even after he ceased most, if not all, of his substance use. Thus, the Court finds that Hoefling would be disabled even in absence of his substance use, and the ALJ's findings to the contrary are not supported by substantial evidence on the record as a whole.

Hoefling was a drug addict from fairly early on in his life. His most common drug use involved methamphetamine and marijuana. The medical records and treatment notes show that Hoefling stopped his methamphetamine use in or around February 2005. He admitted to continued marijuana use in February 2005 and testified at the October 25, 2007, ALJ hearing that he used marijuana four times in the previous five years. Tr. 376.

The record reveals that Hoefling was hospitalized at St. Luke's Regional Medical Center on two occasions in 2005. The

first hospitalization was from February 14 - 17. Tr. 208-228. While hospitalized, Hoefling reported having suicidal thoughts after being increasingly depressed and after losing his job the prior weekend. Tr. 209. He stated he had difficulty maintaining a job and that he did not have any meaningful relationships. Tr. 209. He also stated that he had been off methamphetamine for approximately two years, but had used them once or twice in the previous several months. Tr. 210. Hoefling further stated that he used alcohol on a binge pattern occasionally. He stated that his drug and alcohol use was much decreased from when he was younger. Tr. 210.

Upon release from the hospital, Hoefling was admitted to Cherokee Mental Health Institute. Tr. 229-252. Of his diagnoses while at Cherokee, none mentioned drug or alcohol abuse or dependence even though the records showed that the medical professionals at Cherokee were aware of his substance use. Tr. 229, 251.

Hoefling subsequently sought treatment with Licensed Independent Social Worker ("LISW") Gary Lewis. On March 14, 2005, Lewis diagnosed Hoefling with bipolar disorder and

severe agoraphobia, as well as polysubstance abuse, in that he last used methamphetamine two years prior and marijuana four days prior. Tr. 254-257. On March 23, 2005, Lewis noted that Hoefling talked about "the manner in which his continued use of pot and alcohol is an extension of his dependence for drugs albeit no longer methamphetamine." Tr. 253. Lewis further noted that Hoefling was "fearful of leaving the house" and that he almost didn't show up at the appointment because of that fear. Tr. 253.

Hoefling's second hospitalization occurred on April 1 – 4, 2005. Tr. 261-282. He was admitted for suicidal and depressed thoughts. Tr. 278. On the date of his admission, Hoefling was assessed a Global Assessment of Functioning ("GAF") score of 39. Tr. 265. His GAF at discharge was a 45. Tr. 265. Furthermore, no drugs or alcohol were detected in Hoefling's body. Tr. 267, 278. Dr. Dean classified Hoefling in part as an "extremely despondent individual who has a great deal of psychomotor retardation... His mood is very depressed." Tr. 281.

To support the ALJ's conclusion that Hoefling's substance use was a contributing factor material to his finding of

disability, the ALJ determined that "once compliant with his
medication and treatment appointments, [Hoefling] reported
progressive improvements." Tr. 22. As a sign that Hoefling
improved, the ALJ cited to Dr. Duggan's April 2, 2005, report
regarding Hoefling's condition while in the hospital, along
with Siouxland Mental Health treatment records subsequent to
Hoefling's discharge. Regarding Dr. Duggan's April 2, 2005,
report on Hoefling's condition, Dr. Duggan noted that
"[Hoefling] states that he has been doing comparatively well."
Tr. 263. This Court, however, finds that "comparatively well"
should be viewed in a relative context given Hoefling's
suicidal and depressed condition upon entering the hospital
just one day prior. Evidence of Hoefling's GAF scores upon
admission and discharge further support this finding. As
mentioned, the record shows that on April 1, 2005, Hoefling's
GAF upon admission to the hospital was 39. On April 4, 2005,
Hoefling's GAF upon discharge was 45. The Court seriously
questions the ALJ's reliance on Dr. Duggan's report when
Hoefling's maximum GAF during his hospital stay was 45, and

was 39 just one day prior to the report.[1]

The Court further questions the ALJ's reliance on Hoefling's treatment records at Siouxland Mental Health as supportive of the ALJ's finding that Hoefling progressively improved. Upon his discharge from the hospital in April 2005, Hoefling sought continued treatment at Siouxland Mental Health with Gary Lewis and Laurie Warren. Tr. 289-366. These records show that Hoefling virtually eliminated his alcohol and drug use. However, while there were certainly sporadic periods of improvement, Hoefling's impairments never ceased and in some cases appeared to worsen, especially with respect to his agoraphobia[2] and panic attacks.

---

[1] A GAF of 45 (his highest GAF while at the hospital) reveals "serious symptoms (e.g., suicidal ideation...) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. 2000). See also Brueggemann, 348 F.3d at 695 (A GAF of 50 "reflects serious limitations in the patient's general ability to perform basic tasks of daily life, and the record shows that the VE considered a claimant with a GAF of 50 unable to find any work."). Thus, even were this Court to rely on his highest GAF while in the hospital, Hoefling still had very serious limitations.

[2] "Agoraphobia is a fear of being in places where help might not be available. It usually involves fear of crowds,
(continued...)

In November 2006, Hoefling expressed his "intense fear of leaving his apartment" and "his severe lack of trust of others." Tr. 315. He also reported that he "feels like an emotional wreck, forgets easily." Tr. 319. Lewis suggested that Hoefling "set a goal to get out of his house each day as a way to confronting the tendency to become agoraphobic." Tr. 320.

In December 2006, Hoefling stated that he was "kind of depressed and really does not know why." Tr. 322. Warren found that he had major depressive disorder, recurrent episode, moderate degree, as well as panic disorder with agoraphobia. Tr. 322.

In January 2007, Hoefling stated he was doing "OK," that his depression was a little better, but that his anxiety was still high." Tr. 326. He also mentioned he was "fearful of

---

[2] (...continued)
bridges, or of being outside alone... Agoraphobia often accompanies another anxiety disorder, such as panic disorder or a specific phobia." Symptoms associated with agoraphobia, and especially with Hoefling in this case, include: anxiety or panic attack; becoming housebound for prolonged periods of time; feelings of detachment or estrangement from others; and feelings of helplessness. Medline Plus Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/print/ency/article/000931.htm (last visited July 7, 2010).

others, feels angry at them and has no insight into what this is about for him." Tr. 329.

In March 2007, Hoefling reported that he struggled to get out of the house for a walk around the block daily. Tr. 334. Lewis reported that Hoefling was "visibly frightened of leaving his house, continues with strong cravings for the methamphetamine." Lewis stated that he needed to see Hoefling in two weeks, as opposed to three. He stated: "[t]he purpose is to schedule something to get him out of the house, feel safe in the office. He is too frightened to go to recovery meetings, therefore his reactions are more intensive as he remains essentially alon[e]." Tr. 336.

In April 2007, Hoefling reported that the increased medication was helping him. Lewis noted that "he seems to hold his own, but not making much progress as he remains with panic and anxiety and paranoid ideas." Tr. 340.

In May 2007, Warren noted that "[Hoefling] is clean and sober and exercises as well. Hoefling has occasional panic attacks and it is mostly when he has to be out." Tr. 344. He was able to get out of the house to take walks and do yard work. Tr. 347.

In June 2007, Lewis reported: "[H]e said he worries for a day, the bus ride to his agency, but he is persisting and not objecting from trying. He goes grocery shopping with his mother, mows the lawn and keeps his appointments, otherwise stays indoors much of the time. He remains sober ... I suggest he begin considering attending a movie with his mother... He isn't ready for this, agreed to consider." Tr. 351. Warren's notes reflect that Hoefling reported his anxiety was at an all time high and he did not know why. Tr. 353. Warren also states: "[Hoefling] is not in contact with friends and family. Physically [Hoefling] is feeling OK. [Hoefling] also complains of having bad panic attacks as well." Tr. 353.

In July 2007, Hoefling reported that he was trying to get out of the house more and confront his fears. Tr. 355. He stated he believed the medications were more helpful. Tr. 355. He later reported that "he has been doing more in and outside the home," but that he "still struggles with the paranoid feelings." Tr. 356. He also reports that he was "clean and sober and ... that he is trying really hard to remain that way." "[Hoefling] states that he still has a

little anxiety and panic when he leaves the house but that is also way down." Tr. 357.

In August 2007, he reported anger problems but that he was doing better with his symptoms overall, and that he was more hopeful of the future. Tr. 359.

In September 2007, the report shows that "he is still getting a few highs and lows and he states that he is getting panicky when he has to leave the house and he is isolating." Tr. 360. Furthermore, "[Hoefling] appeared more irritated as he struggles with moderate to severe paranoia. He continues with social anxiety and agoraphobic reactions. His goal is to remain sober and work through the mental and social issues of remaining sober." Tr. 362.

In October 2007, Hoefling stated that he stayed indoors much of the time and had a fear of others. He also talked about his "increasing loneliness." Tr. 363.

This Court has outlined these records to show that, when reviewed in their entirety, they reveal Hoefling experienced improvement at times, but his agoraphobic, panic, and depressive symptoms and impairments never ceased and perhaps even worsened. Neither the hospital records nor the therapy

treatment notes on which the ALJ relied support a finding that Hoefling's symptoms progressively improved and, as a result, Hoefling's substance use was a contributing factor material to his disability.

These treatment records are, moreover, consistent with Hoefling's ALJ testimony regarding the severity of his symptoms and impairments. At the October 25, 2007, ALJ hearing, Hoefling testified that he was "depressed pretty much all the time." Tr. 381. He stated that he did not leave the house to go be with people or meet with people, and that he had panic attacks if he left the house. Tr. 383. When asked about the last time he left the house and had a panic attack, Hoefling testified that he had a panic attack on his last visit to his therapist. Tr. 383. He stated the panic attack occurred while he was on the bus. Tr. 384. Regarding his panic attacks generally, Hoefling testified that he experienced them ten or eleven times per week. Tr. 386. Some of these attacks even happened while he sat at home and watched television. Tr. 386. He further testified that he could not remember a time when he left the house over the prior four years without having a panic attack. Tr. 386.

Hoefling also testified that he had trouble attending the Alcoholics Anonymous meetings because of the people. Tr. 378. Hoefling testified that this problem had gotten worse. Tr. 379.

Hoefling testified that he still suffered from depression and that he sometimes did not want to live anymore. Tr. 389. He testified that he still had thoughts of suicide or not wanting to live once in a while, but that it had been better. Tr. 389. Hoefling testified that his bipolar disorder caused him to have manic phases where he had very high and very low moments. Tr. 390. When he suffered these conditions, Hoefling testified that he could not work. Tr. 390-391. He also stated that since he had been taking Geodon, those symptoms improved but were nevertheless still present at times. Tr. 392.

The Court is persuaded the ALJ correctly found that Hoefling was disabled at step 3; however, the ALJ's decision that Hoefling's substance use was a contributing factor material to his disability is not supported by substantial evidence on the record as a whole. Substantial evidence reveals that Hoefling's impairments were not affected by his

substance use to the extent that he would not have been disabled had he not used alcohol and drugs. Substantial evidence reveals that Hoefling's alcohol and drug use significantly decreased, if not ceased altogether, shortly before his second hospitalization in April of 2005.[3] He continued, however, to suffer agoraphobic, panic, and depressive symptoms over the next couple years while he remained sober, and this Court is persuaded that substantial evidence reveals that these symptoms and impairments left him totally disabled.[4] Therefore, substantial evidence reveals that Hoefling would have been disabled even had he not abused drugs or alcohol in the past.

## III. CONCLUSION

For the reasons stated herein, this Court is persuaded

---

[3] Indeed, Hoefling's drug and alcohol screens while hospitalized in April 2005 were negative. He also testified that he used marijuana only four times in the previous five years. Tr. 376. He further testified that he did not like alcohol and that it made him sick. Tr. 379.

[4] His agoraphobic symptoms appeared to be particularly severe around the time of the ALJ hearing. At the ALJ hearing, when Hoefling's representative asked the VE whether an individual who was also limited by agoraphobia and would not be capable of attending work more than five consecutive days, and who would then be absent from work, would be capable of competitive employment, the VE answered, "No." Tr. 408.

that substantial evidence in the record does not support the ALJ's finding that Hoefling was not disabled under the Act. Substantial evidence shows that Hoefling met his burden of proving he was disabled under the Act prior to his date last insured, and that there are no jobs in the national economy he could perform. This Court is further persuaded that there is no need to remand to the Commissioner to take additional evidence. The record contains sufficient evidence to allow the Court to render this decision.

**IT IS THEREFORE HEREBY ORDERED**, pursuant to sentence four of 42 U.S.C. § 405(g), that the decision of the ALJ is reversed, and the Commissioner is directed to compute and award disability benefits to Hoefling with an onset date of February 14, 2005.

A timely application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, if this decision is not appealed, and Hoefling's attorney wishes to apply for EAJA

fees, he must do so within 30 days of the entry of the final
judgment in this case.

**IT IS SO ORDERED** this 12th day of August, 2010.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa